## S. B. WILSON v. JOE DANDERAND.[1]

December 19, 1913.

Nos. 18,413—(102).

**Sale — breach of warranty.**

1. In action upon promissory notes given in part payment of the purchase price of a full blood Percheron horse, in which defendant interposed the defense of a warranty and breach thereof, it is *held:* (1) That the reply admits the warranty substantially as alleged in the answer, and (2) that the evidence sustains the verdict to the effect that there was a breach of the warranty, in that the horse delivered to defendant was not a Percheron animal, and that defendant was damaged in consequence of the breach to the extent of the difference in value between the horse delivered and the one agreed to be delivered.

**Assignments of error.**

2. Other assignments of error *held* to present no reversible error.

Action in the district court for Lyon county to recover $1,359.65 upon two promissory notes. The facts are stated in the opinion. The case was tried before Olsen, J., who at the close of the testimony denied plaintiff's motion for a directed verdict, and a jury which returned a verdict in favor of defendant. From an order denying plaintiff's motion for judgment notwithstanding the verdict or for a new trial, he appealed. Affirmed.

*Barnes & Magoon, S. B. Wilson, Johnson & Lende, Wallace J. Black* and *Charles S. Cairnes,* for appellant.

*Tom Davis* and *Ernest A. Michel,* for respondent.

BROWN, C. J.

This action was brought to recover upon certain promissory notes made by defendant to Robert Burgess & Lukyn, a copartnership, and by them transferred to plaintiff. The notes represent a part of the purchase price of a horse sold by the firm named to defendant. Defendant interposed in defense that the horse so purchased was represented and warranted as an imported full-blood Percheron, and

[1] Reported in 144 N. W. 460.

entitled to registration as such in the books of the Percheron Society of America; that in making the purchase defendant relied upon the warranty; that the warranty was not true and that there was a breach thereof resulting in damage to defendant. The answer further alleged that the horse was not a full-blood Percheron; on the contrary, was what is known in the trade as French draft, the value of which according to some of the evidence was very much less than the Percheron. The reply admitted the warranty substantially as alleged by defendant, and plaintiff at the trial made no claim that he was a bona fide holder of the note, it being conceded that the defense interposed, if true, was available to defendant as against plaintiff. Defendant had a verdict and plaintiff appealed from an order denying his alternative motion for judgment or a new trial.

The principal question presented to this court is whether the evidence supports the verdict; though some of the assignments of error challenge the correctness of certain rulings of the court on the trial which will be referred to in their order.

1. There is no controversy in the pleadings or evidence upon the question of warranty; it stands admitted that Burgess & Lukyn warranted the horse sold to defendant as a French Percheron. The substantial controversy is whether there was a breach of that warranty. Defendant contended on the trial, and again in this court, that the evidence fully justifies the conclusion that a Percheron horse was not in fact delivered to him, but instead thereof a French draft animal. While plaintiff insists that the evidence is practically conclusive that the horse delivered to defendant was a Percheron, and that the contract of sale was thereby fully performed. Nor is there any dispute that at the time of the sale Burgess & Lukyn delivered to defendant a certificate of pedigree, printed in the French language, and which certified that the horse was a French draft animal named "Bysantin." This certificate defendant could not read. There was also delivered to defendant at the same time a certificate issued by the "American Percheron Horse Breeders Association," an organization located and doing business at Chicago, wherein it was certified that the particular horse had been registered in its books as a Percheron, and the animal was there given the name of Bysantin. This certif-

icate was printed in the English language, and plainly certified that the horse Bysantin was a registered Percheron, imported from France by Burgess & Lukyn in 1904. The bill of sale delivered with the horse also described the animal as an imported French Percheron named Bysantin. With these muniments of title and pedigree defendant closed the transaction.

A subsequent attempt to register some of the offspring of the horse with the Percheron Society of America failed for the reason, asserted by the officers of that society, that the animal was not a Percheron, but a French draft, and could not therefore be registered as a Percheron. This occurred some four years after the original bargain and sale. The situation was called to the attention of Burgess & Lukyn, and after subsequent investigation and inquiry they reported to defendant that there had been a mistake in the delivery of the pedigree papers in France, at the time the horse, with others, was purchased, and that in fact the horse Bysantin was not imported by them, but instead thereof a horse named "Aubepin," which was a full-blood Percheron, and that the horse Aubepin was the animal sold and delivered to defendant. The trial below, as respects this branch of the case, centered around this claim of mistake, and whether in fact the horse Audepin, an unquestioned Percheron, was the one delivered to defendant. There can be no question, if the horse delivered to defendant was in fact a Percheron, whatever may have been his name, that the contract of warranty was performed, and defendant could in such case have no cause of complaint. But the question whether there was a mistake in the pedigree papers, as claimed by plaintiff, and whether a Percheron was in fact delivered to defendant, we conclude, after a somewhat careful consideration of the record, were issues of fact for the jury. And since the trial court has approved the verdict we discover from the record no sufficient reason for interference.

Burgess & Lukyn, in 1904, imported a number of horses from France, among them being the horse sold defendant. The lot contained both Percheron and French draft horses. Certificates of pedigree were delivered for each horse, and were brought with the animals to this country. The certificate for the horse Bysantin, printed

in French, described him as a French draft, yet upon the strength of that certificate Burgess & Lukyn procured his registration in the Chicago Breeders Association, above mentioned, as a Percheron, delivering the certificate thereof to defendant at the time of the sale. The explanation of this certificate is found, as we understand the record, in the fact that both breeds of horses were eligible to registration indiscriminately in that society. But this does not explain why the Chicago certificate should give a false pedigree, when the true pedigree, namely, French draft, was plainly stated in the French certificate. This was left on the trial without sufficient explanation.

A deposition of the French trader, one Beatrix, was taken and read in evidence on the trial. He testified to the alleged mistake in delivering the wrong pedigree certificate, and further that he knew nothing about the horse Bysantin, whose pedigree he delivered, but did know that he sold the horse Aubepin to Burgess & Lukyn in 1904. If he knew nothing about Bysantin, as he testified, it is a little difficult to understand why he should be possessed of and deliver to these purchasers a certificate of his pedigree, unless it was the result of a general uncertainty in the delivery of such certificates, for which no sufficient explanation could be given. Beatrix was an extensive dealer in blooded horses and though he might after a lapse of four years be able to name all horses sold to a particular purchaser, and recall the fact that he gave out a wrong certificate as to one of them, the jury, from the evidence presented, might well have concluded that his testimony was unreliable, and that his claim of mistake not sufficiently shown. Again the French certificate particularly described the horse, and there was a conflict in the evidence whether the horse defendant received corresponded to the description of the horse Aubepin, thus presenting an issue of fact. Other items of evidence might be referred to, but we deem it unnecessary. We have considered it all with the result above stated. The verity of the alleged claim of mistake, and that of the witnesses was for the trial court and jury, and we are unable to say, as strongly urged by counsel for plaintiff, that the evidence is conclusive that defendant in fact received a Percheron horse. The question was one of fact. The evidence tending

to show the difference in value between a Percheron and French draft horse was also conflicting and for the jury.

2. The other assignments do not require extended mention. We find no error in the exclusion or admission of evidence of a character to justify a new trial. There was no abuse of discretion in permitting defendant to reopen his case for the introduction of additional evidence. The question whether evidence of the warranty alleged in the answer was inadmissible because varying and adding to the terms of the bill of sale is without merit. The reply admitted the warranty substantially as alleged in the answer. Thompson v. Libby, 34 Minn. 374, 26 N. W. 1, is not therefore in point. The answer, though containing allegations of fraud and deceit, properly construed, presented a case of ordinary warranty and breach thereof, and the trial court was not in error in so submitting the case to the jury.

All assignments of error not specially mentioned have received consideration with the result that no reversible error appears.

Order affirmed.